Little v. Kerr.

HENRY S. LITTLE, receiver, appellant,

v.

JOHN KERR, respondent.

Complainant claimed damages for the breach of a contract alleged to have been made with an employee of the defendant company.—*Held*, that the employee had no authority to make the contract in question, and that the evidence did not show that in fact such contract had been made.

On appeal from a decree of the Chancellor (Runyon), whose opinion is reported in *Kerr* v. *Little, 15 Stew. Eq. 528*.

*Mr. B. Williamson*, for appellant.

*Mr. A. A. Clark*, for respondent.

The opinion of the court was delivered by

GARRISON, J.

This appeal calls in question the final decree of the court of chancery, whereby substantial damages were given to the complainant, John Kerr, against Henry S. Little, who was sued as the receiver of the Central Railroad Company of New Jersey. The gravamen of the action was the breach of contract made with Francis S. Lathrop, late receiver of said railroad, by the terms of which complainant was to have all the coals and ashes dumped by the company's locomotives in a certain ash-pit, as his compensation for keeping the pit clear. This contract, the complainant insists, was to continue for one year from the 1st day of March, 1878, so that when he was ordered by the receiver to quit, on September 1st, 1878, he was deprived of six months' profits of his contract. The defendant denies that there was a contract for any specified time, contending that the arrangement was determinable at the will of the company. The court of chancery, in making the decree in question, resolved this issue in favor of the complainant. The correctness of this conclusion is now challenged by the defendant.

The circumstances under which the arrangement between the parties was made are given by the complainant. He states, in his bill, that his agreement was not made with the receiver directly, but with George W. Abbott and one Ward, both of whom at that time were employees on the railroad under the receivership of Mr. Lathrop. Ward, who was a master mechanic on the road, is dead. George W. Abbott was called as a witness on behalf of the complainant. He testified that in February, 1878, he was trackmaster, having charge of that section of defendant's road-bed which included the ash-pit in controversy, and that he made with Kerr, the complainant, a contract whereby Kerr was to have the coals for one year for keeping the pit clear. This contract, Abbott further testified, had been expressly authorized by Mr. W. W. Stearns, the superintendent of the road.

Little *v.* Kerr.

It is important to note that Abbott rested his power to make this contract solely upon the authority delegated to him by his superior for that purpose, and not upon any authority inherent in himself as employee. Nor is there anything in the case tending to show that, under his general employment, Abbott was authorized to bind the defendant company by a contract of the nature and direction of this one; on the contrary, the evidence is that he had no such power. The validity of this contract, therefore, depends upon Abbott's authority to make it, and this, in turn, rests upon proof of the delegation of such power to him.

Upon this point the language of Abbott is explicit. " I now remember," he said on the witness-stand, " that I was limited as to the time the contract was to run by Mr. Stearns; it was one year, and I had no discretion to make it for a less or a longer period." Here is testimony of an express delegation to make the contract in question. Mr. Stearns testifies flatly to the contrary.

In this contradictory state of the testimony, the relative credibility of the witnesses becomes a pertinent inquiry. The material for this test is furnished by their earlier connection with this transaction.

In 1878, when Kerr had been clearing the ash-pit something less than six months, Stearns wrote the following letter to Abbott:

" Elizabeth, N. J., August 31st, 1878.

" G. W. Rowland, Despr., and
" Geo. W. Abbott, Esq.

"*Gentlemen.*—From September 1st prox , we will discontinue the contract arangement of having Hampton ash-pit cleaned by outsiders for the contents of same, and hereafter do the work ourselves, same as at other points, and dispose of the cinders the same as we did formerly.

" This will put a stop to any jealousies or ill-feeling on the part of the 'Lime men' who are not individually benefited by the present arrangement.

" Yours truly,
" W. W. Stearns,
"Asst. Gen. Supt."

It was this letter which occasioned the discharge of Kerr. The evidence shows that it was Abbott who discharged him. In

his testimony he thus speaks of it: "I then had orders from the superintendent to discontinue the contract; by reason of these orders I went up there and told Mr. Kerr that I would thereafter clear the ash-pit with the company's men, and ordered him to stop." This is Abbott's account of the rescission of this contract. Surely some expression of surprise, something denoting indignation, would have comported better with his present version of affairs—at least he would have made an offer to see Kerr set right by reminding Mr. Stearns that by his express direction this contract had been made for a year, neither more nor less.

Abbott had on this occasion no reason to suppress the fact of his authority to make this contract, and it is difficult to believe that if he had had the express authorization of Stearns he would, at this juncture, have forgotten that circumstance.

But more remarkable than this is the letter that he writes to Mr. Stearns, in August, 1879. From the testimony it appears that Kerr had put in a claim to Stearns for damages arising from his discharge. In the course of investigating Kerr's claim, Stearns had a talk with Abbott about the arrangement with Kerr. The point under investigation was whether the contract with Kerr was for any specified time. On leaving Stearns, Abbott wrote to him this letter:

" (B. 41.)          F. S. LATHROP, Receiver.
      "CENTRAL RAILROAD COMPANY OF NEW JERSEY,
              "Transportation Department.
                            "SOMERVILLE STATION, Aug. 9th, 1879.
" W. W. STEARNS,
          "Asst. Gen. Supt.
    "*Dear Sir*:  My recollection of the ash-pit business at Hampton is that there was a verbal contract made with John Kerr, but no time was specified. He was to have the cinders until the company should want them.
                  " Yours respty.,
                            "GEO. W. ABBOTT."

In view of the circumstances under which this letter was written, I do not see how Abbott could have put in words a more distinct disavowal of the authority he now claims. He not only disavows authority to make a contract for a specified time, but he also denies that any such contract was made by him.

Other letters passed between Abbott and Stearns of similar import.

It may be said, and with truth, that these letters do not, of themselves, have any direct probative force, but where the relative credibility of two conflicting witnesses is the subject of inquiry, evidence going to the worthlessness of the testimony of one produces practically the same result as direct proof.

Nor is the proof of the making of the contract itself of a more satisfactory nature. Complainant's witnesses are the only ones examined upon this point; although strangely enough Kerr himself nowhere testifies that he had a contract for any specified time. Abbott, however, testifies to it, but his testimony in this respect suffers from the same infirmities which characterized it on the question of authority. His letter to Stearns, written in 1879, during the investigation of this contract by his superior, turning, as it did, on this very question of duration, stands as a barrier over which he cannot hope to pass with equal credit to his veracity and his faculties.

The only other witness who testified upon the subject of the contract was Edward Kerr, the son of the complainant. Edward Kerr, however, was not a witness to the making of the contract, in any sense. Giving to his testimony, which is confusing, if not contradictory, the construction most favorable to the complainant, it amounts to nothing more than proof of a statement made by Mr. Abbott to the effect that Mr. Kerr had a contract for one year. It is not clear from the testimony whether the complainant was present; in his own testimony he mentions an interview which corresponds with this one in date and circumstance, but in which he says that what Abbott stated was that the contract (without any mention of duration) was all right.

But in any event, the testimony of Edward Kerr is not evidence of any contract. If the contract was not then completed, the witness should have told what the parties did, in order that the court might determine whether they had contracted. If it was completed, as the language ascribed to Abbott would import, then what Abbott said constituted no part of the contract, but was mere narration. The witness's testimony in this latter

event, while proof of the statement of a fact, was not evidence of the truth of that fact. *Runk* v. *Ten Eyck, 4 Zab. 756.*

The complainant, having failed in his proof of the making of the contract sued on, and also of the authority to make it, the decree in his favor should be reversed.

The record should be remitted to the court of chancery in order that a decree may be entered in accordance with these views.

For affirmance—DIXON, CLEMENT, McGREGOR—3.

For reversal—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, GARRISON, KNAPP, MAGIE, REED, VAN SYCKEL, BROWN, COLE, PATERSON—11.